UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOMINICK A. AGAPOV,

                              Plaintiff,

-against-

UBIF FRANCHISING CO.,

                              Defendant.

**OPINION AND ORDER**

23-CV-02178 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

      Dominick A. Agapov ("Plaintiff"), proceeding *pro se*, commenced an action on December 6, 2022 in the Supreme Court of the State of New York, County of Westchester against UBIF Franchising Co. ("Defendant") by Summons with Notice. (Doc. 1, "Not."). Plaintiff filed his Complaint on February 3, 2023. (Doc. 1-1 at 8-10, "Compl."),[1] alleging that Defendant, his former employer, discriminated and retaliated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and New York State Human Rights Law ("NYSHRL"), and asserting additional claims for breach of contract, unpaid commissions, and defamation under New York State law. On March 14, 2023, Defendant removed this action from state court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. (Not. ¶ 8).

      On March 8, 2024, the Court granted Defendant's motion to dismiss the action without prejudice based on a failure to serve. (Doc. 21, "Prior Order").[2] Thereafter, Plaintiff properly

---

[1] Citations to specific pages of the Notice of Removal, its attachments, and other filings on the docket correspond to the pagination generated by ECF.

[2] The Prior Order is available on commercial databases. *See Agapov v. UBIF Franchising Co.*, No. 23-CV-02178, 2024 WL 1018453, at *1 (S.D.N.Y. Mar. 8, 2024). However, for ease of reference, the Court cites herein the copy of the Prior Order filed on the docket.

served Defendant (*see* Doc. 32) and the Court granted Defendant leave to renew its motion to dismiss (Doc. 34).

Defendant filed its motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (6), and (7), on July 18, 2024. (Doc. 36; Doc. 37, "Def. Br."). Plaintiff opposed the motion (Doc. 38, "Pl. Br."),[3] and it was fully briefed with the filing of Defendant's reply on September 19, 2024. (Doc. 39, "Reply").

For the reasons set forth below, Defendant's motion to dismiss is GRANTED in part and DENIED in part.[4]

## STANDARD OF REVIEW

I.  Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).[5] "The party invoking federal jurisdiction bears the burden of establishing jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir.

---

[3] Defendant claims that Plaintiff's opposition brief is untimely because he did not file it within 14 days of service of the motion, which occurred on July 18, 2024. (Reply at 1, n. 2 (citing Local Civil Rule 6.1(b))). However, Local Civil Rule 6.1 does not apply where deadlines for motion papers have been "provided . . . by the court in a judge's individual practices or in a direction in a particular case . . . ." Here, the Court's July 12, 2024 Order directed that Defendant's motion to dismiss shall be filed by August 12, 2024; Plaintiff's opposition shall be filed by September 11, 2024; and Defendant's reply shall be filed by September 25, 2024. (Doc. 34). Plaintiff's opposition brief was received by the Clerk of Court on September 11, 2024 and filed the next day. (Doc. 38). Accordingly, Plaintiff's submission was timely. *See Rosas v. Berry Plastics (Pliant LLC)*, 649 F. App'x 3, 4 (2d Cir. 2016) ("[F]iling is complete only when papers are delivered into the custody of the clerk" (citing Fed. R. Civ. P. 5(d)(2)(A) ("A paper is filed by delivering it to the clerk[.]")).

[4] The Court assumes the parties' familiarity with the underlying facts and procedural history of this action. Unless otherwise indicated, defined terms and citations herein to documents submitted on the underlying motion have the same meanings and utilize the same format ascribed to them in the Prior Order.

[5] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations, and footnotes.

2009). However, "[w]hen the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . the plaintiff has no evidentiary burden," and "[t]he task of the district court is to determine whether the [complaint] 'alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Carter v. Healthport Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). Moreover, when deciding a Rule 12(b)(1) motion, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers*, 558 F.3d at 143.

When a defendant seeks dismissal under Rule 12(b)(1) "as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.     Rule 12(b)(6) Standard

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted

3

unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare

4

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Defendant seeks dismissal of the Complaint on the basis that: (i) Plaintiff's discrimination and retaliation claims are barred by the statute of limitations; (ii) Plaintiff failed to name the New York State Division of Human Rights ("DHR") as a necessary party; and (iii) Plaintiff failed to allege plausible claims for discrimination, retaliation, breach of contract, unpaid commission, or defamation. (Def. Br. at 6; Doc. 36).

I.   Timeliness of Plaintiff's Claims

   A.  Federal Law Discrimination and Retaliation Claims

Defendant argues that Plaintiff's race discrimination and retaliation claims arising under Title VII are time-barred by the applicable statute of limitations. (Def. Br. at 9-11). "Once a plaintiff receives a right-to-sue letter from the EEOC, he has 90 days to file suit." *Turner v. MTA Metro-N. R.R.*, No. 17-CV-09168, 2024 WL 1177227, at *4 (S.D.N.Y. Mar. 19, 2024). "[T]he 90–day limitations period set forth in 42 U.S.C. § 2000e–5(f)(1) begins to run on the date that a right-to-sue letter is first received either by the claimant or by counsel, whichever is earlier." *Id.* (quoting *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011) (per curiam)). Thus, "a plaintiff must 'file' a suit alleging Title VII claims before 'the strictly enforced ninety-

5

day limit ha[s] expired.'" *Id*. (quoting *Lewis v. NYC Dep't of Educ.*, No. 12-CV-00675, 2013 WL 5405534, at *5 (S.D.N.Y. Sept. 25, 2013)).

Here, the right-to-sue letter is dated August 25, 2022. (Doc. 1-2 at 20-21; Doc. 15-6). Defendant contends that Plaintiff is, as a matter of law, presumed to have received the right-to-sue letter three days after it was mailed, on August 28, 2022. (Def. Br. at 11). There is no allegation as to when the right-to-sue letter was received, rather the letter itself states it was "issued" on August 25, 2022. However, Plaintiff asserts in his opposition brief that he received the right-to-sue letter in "mid-September 2022." (Pl. Br. ¶ 1).[6] "[C]ourts in this circuit have repeatedly held that an allegation of the date of receipt of a right-to-sue letter must be credited as true on a motion to dismiss." *Rivera v. Children's & Women's Physicians of Westchester, LLP*, No. 16-CV-00714, 2017 WL 1065490, at *9 (S.D.N.Y. Mar. 18, 2017) (collecting cases). "[T]he requirement that [the court] accept the allegations in the complaint as true overcomes any presumption that may exist." *Id*. (quoting *Salerno v. City Univ. of New York*, No. 99-CV-11151, 2002 WL 31856953, at *4 n.6 (S.D.N.Y. Dec. 19, 2002)). Accordingly, at this stage, the Court accepts as true that Plaintiff received the right-to-sue letter in mid-September 2022. Ninety days from September 15, 2022 is December 14, 2022. Plaintiff filed this action on December 6, 2022. (*See* Not.). Therefore, giving credit to Plaintiff's claimed receipt on September 15th, Plaintiff's federal claims are not time-

---

[6] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings . . . .'" (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005))); *see also Davis v. Cnty. of Suffolk*, No. 18-CV-00303, 2020 WL 7699919, at *4 (E.D.N.Y. Oct. 30, 2020) ("[I]n deciding a motion to dismiss a pro se complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a pro se litigant attaches to his opposition papers." (internal citations and quotation marks omitted)), *adopted by* 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020). Accordingly, the Court considers on this motion the additional allegations in Plaintiff's opposition submission.

barred. *See Evans v. New York City Dep't of Educ.*, No. 23-8119-CV, 2024 WL 4501963, at *2 (2d Cir. Oct. 16, 2024) ("A complaint is properly dismissed as filed beyond the limitations period only if the defect is clear from the face of the complaint."). Further discovery may warrant a different conclusion at summary judgment.

B. State Law Discrimination and Retaliation Claims

With respect to Plaintiff's race discrimination and retaliation claims arising under the NYSHRL, Defendant argues that the claims are time-barred because Plaintiff did not timely appeal the DHR's final determination. (Def. Br. at 9-11). The Court need not and does not assess this timeliness argument, however, because it lacks subject-matter jurisdiction to adjudicate Plaintiff's state law claims on a more fundamental basis—the election-of-remedies provision of N.Y. Exec. L. § 297(9).[7] *See McLeod v. Gen. Vision Servs., Inc.*, No. 13-CV-06824, 2018 WL 3745662, at *4 (S.D.N.Y. Aug. 6, 2018) ("The election-of-remedies provisions of the NYSHRL and NYCHRL raise an issue of subject matter jurisdiction." (citing *Moodie v. Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 881-82 (2d Cir. 1995)). Section 297(9), "bars a person who has 'filed a complaint hereunder [with the DHR] or with any local commission on human rights' from filing a lawsuit for the same cause of action unless the [DHR] complaint was dismissed on grounds of 'administrative convenience[,] . . . untimeliness[,] . . . [or where] the election of remedies is annulled.'" *Bleichert v. New York State Educ. Dep't*, 793 F. App'x 32, 34 (2d Cir. 2019). "Section 297(9) bars actions brought in federal as well as state court." *Id.* "Thus, once an individual has brought a claim before the [DHR], [he] may not pursue it again 'as a plenary action in another court.'" *Id.* (citing *York v.*

---

[7] Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 237 (S.D.N.Y. 2019) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)); *Marom v. Town of Greenburgh*, No. 20-CV-03486, 2021 WL 797648, at *4 (S.D.N.Y. Mar. 2, 2021) (dismissing claims for want of subject-matter jurisdiction *sua sponte* pursuant to the Court's "inherent authority to evaluate the existence of subject-matter jurisdiction under Rule 12(h)(3)").

*Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002)). A person who brings a case before the DHR "may appeal only to the Supreme Court of the State of New York." *Id*. (citing N.Y. Exec. Law § 298).

Here, Plaintiff filed a complaint with the DHR regarding the race discrimination and retaliation claims at issue in this action, and the DHR determined that there was no probable cause to believe that race discrimination or retaliation occurred. (Doc. 1-1 at 37-39; Doc. 15-1). Plaintiff does not allege that the DHR dismissed his claims for administrative convenience, untimeliness, or annulment of the election of remedies. Plaintiff's attempt to bring his state law claims in this federal court is, therefore, "in contravention of the procedures outlined in N.Y. Exec. Law § 297(9)." *Bleichert v. New York State Educ. Dep't, Off. of Hum. Res.*, No. 18-CV-00611, 2019 WL 1060800, at *6 (N.D.N.Y. Mar. 6, 2019), *aff'd*, *Bleichert*, 793 F. App'x at 32.

Accordingly, the Court does not have subject-matter jurisdiction over Plaintiff's discrimination and retaliation claims arising under the NYSHRL, and the motion is granted as to those claims.[8]

II.   Merits of Plaintiff's Claims

A. First Claim for Relief: Discrimination in violation of Title VII

Plaintiff alleges that he was discriminated against on the basis of race in violation of Title VII when he was relocated to the Mount Kisco Store where the working conditions were "unsafe and undesirable." (Compl. ¶¶ 4, 12). Plaintiff further alleges that Black employees were treated differently than he was, that the racially charged complaint made against him was used as

---

[8] In light of the Court's dismissal of Plaintiff's state law discrimination and retaliation claims as time-barred, the Court need not and does not reach Defendant's argument regarding Plaintiff's purported failure to name DHR as a necessary party pursuant to Federal Rule of Civil Procedure 12(b)(7), which it asserts as an alternative basis for dismissal of these claims. (Def. Br. at 11-12).

workplace intimidation to influence his relocation, and that the only other driver who could have been relocated to the Mount Kisco Store, who is Black, was not considered for the transfer. (*Id.* ¶¶ 10(b) and (c); Pl. Br. ¶¶ 2(c) and (e)).

Title VII makes it unlawful for employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–2(a)(1)). "To establish a *prima facie* case of discrimination under Title VII . . . a plaintiff must allege that (1) [he] is a member of a protected class; (2) [he] is qualified for the position held; (3) [he] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Malloy v. Pompeo*, No. 18-CV-04756, 2020 WL 5603793, at *8 (S.D.N.Y. Sept. 18, 2020).[9]

Defendant challenges only the third element, arguing that Plaintiff failed to plausibly allege that he was subject to an adverse employment action because his relocation to the Mount Kisco Store did not constitute a legally material change in the terms and conditions of his employment. (Def. Br. at 13). The Second Circuit recently made clearer what is required to adequately allege an adverse employment action under Title VII. *See Back v. Hapoalim*, No. 24-1064-CV, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024). "[T]o allege an adverse employment action—such as an adverse transfer—the plaintiff 'does not have to show . . . that the harm incurred was significant[ ] [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the

---

[9] To the extent Defendant argues that Plaintiff, who is not a racial minority, fails to meet the standard for "reverse discrimination" (Def. Br. at 14), the Court declines to apply this heightened standard. *See Brand v. New Rochelle City Sch. Dist.*, No. 19-CV-07263, 2022 WL 671077, at *11 n. 32 (S.D.N.Y. Mar. 7, 2022) ("[C]ourts in this District have found that white plaintiffs are not held to a higher standard in Title VII cases.").

employee must exceed a heightened bar.'" *Id.* (quoting *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024)). "Instead, the text of Title VII requires only that a transferee show '*some* harm respecting an identifiable term or condition of employment.'" *Id.* "In other words, '[t]he transfer must have left [him] worse off, but need not have left [him] significantly so.'" *Id.*

Here, Plaintiff contends that his relocation to the Mount Kisco Store was adverse because: (i) his hours were shifted to be three hours later; (ii) the location was a farther drive from his home; (iii) the amount of time he spent driving to complete his job duties "dramatically increased," which resulted in increased driver fatigue; and (iv) the conditions of the van he drove were "unacceptable," including a "putrid smell in the van," a broken phone holder, and a broken "sit height adjuster." (Pl. Br. ¶ 2(e)). Under the standard articulated by the Supreme Court in *Muldrow* and adopted by the Second Circuit in *Back*, Plaintiff's allegations that he was made to drive for longer hours and at later times of the day, and that the conditions of the work van at the Mount Kisco Store were objectively inferior to the point of being unsafe, are sufficient to show that he endured some harm to the terms and conditions of his employment when he was forcibly transferred to the Mount Kisco Store. (Compl. ¶ 4; Pl. Br. ¶ 2(e)). Plaintiff, therefore, has plausibly alleged an adverse employment action.

Accordingly, the motion is denied as to Plaintiff's discrimination claim arising under Title VII.

B. <u>Second Claim for Relief: Retaliation in violation of Title VII</u>

Plaintiff alleges that he was retaliated against in violation of Title VII when he was fired after protesting his transfer to the Mount Kisco Store. (Compl. ¶ 11).

To state a claim for Title VII retaliation, Plaintiff must allege "1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action;

and 4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013). "A plaintiff engages in protected activity when he (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Ramirez v. Michael Cetta Inc.*, No. 19-CV-00986, 2020 WL 5819551, at *19 (S.D.N.Y. Sept. 30, 2020).

Defendant argues that Plaintiff's retaliation claim fails because he does not allege that he engaged in a protected activity. (Def. Br. at 15). "A plaintiff engages in protected activity when he (1) opposes employment practices prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an investigation, proceeding or hearing arising under Title VII." *Ramirez v. Michael Cetta Inc.*, No. 19-CV-00986, 2020 WL 5819551, at *19 (S.D.N.Y. Sept. 30, 2020). "[O]pposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection . . . opposition includes activities such as making complaints to management . . . ." *Hernandez v. Kwiat Eye & Laser Surgery, PLLC*, No. 1:20-CV-00042, 2023 WL 372105, at *9 (N.D.N.Y. Jan. 24, 2023), *aff'd*, No. 23-7679-CV (2d Cir. Oct. 20, 2023) (summary order). Here, Plaintiff alleges that he was terminated "[a]fter protesting [his] unjust relocation" to the Mount Kisco Store. (Compl. ¶ 11). The premise of the complaint is that Defendant treated Plaintiff differently than Black employees and, in particular, chose Plaintiff for the relocation without ever considering the other driver at the Scarsdale Store, who is Black. (Compl. ¶ 10; Pl. Br. ¶ 2(c)). Thus, while Plaintiff does not articulate exactly what he protested as being "unjust" about the relocation, drawing all inferences in favor of Plaintiff and following a natural reading of the complaint, he has alleged that he protested the discriminatory nature of the decision to relocate him to Mount Kisco. *See Sollazzo v. Rest.*, No. 15-CV-00252, 2016 WL

1071031, at *11 (S.D.N.Y. Mar. 17, 2016) ("[T]he Second Circuit has recognized that a protected activity includes . . . 'informal protests of discriminatory employment practices, including making complaints to management.'" (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990))). As such, his complaints to management about the transfer that preceded his termination may well be protected as complaints of discrimination.

Accordingly, the motion is denied as to Plaintiff's claim for retaliation in violation of Title VII.

### C. Third Claim for Relief: Breach of Contract

Plaintiff generally alleges that Defendant breached his employment contract. (Compl. ¶ 12). Defendant argues that this claim should be dismissed because Plaintiff does not attach a contract to the complaint nor identify a term or provision of a contract that was breached and asserts that no employment contract exists because Plaintiff's employment was at-will. (Def. Br. at 15-16). Plaintiff does not respond regarding the at-will nature of his employment but rather argues that his manager breached an implied contract when he told Plaintiff via text message that he was substituting for the driver at the Mount Kisco Store and would not be permanently moved to that location. (Pl. Br. ¶ 3).

"The elements of a breach of implied contract claim are the same as for a traditional breach of contract claim: '(1) the existence of a contract, (2) performance by the party seeking recovery, (3) breach by the other party, and (4) damages suffered as a result of the breach.'" *In re Unite Here Data Sec. Incident Litig.*, No. 24-CV-01565, 2024 WL 3413942, at *12 (S.D.N.Y. July 15, 2024) (quoting *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 F. App'x 274, 276 (2d Cir. 2018)). An implied contract may result from the facts and circumstances of the case and the intention of the parties as indicated by their conduct. *Id*. Under New York law, an implied-in-fact

contract requires all of the elements required of any valid contract, including consideration, mutual assent, legal capacity, and legal subject matter. *Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 178 (2d Cir. 2006). Here, the screenshot attached as Exhibit 2 to Plaintiff's opposition purports to show a text message from Plaintiff's manager saying that Plaintiff's work at the Mount Kisco Store was "not going to be a regular thing." (Pl. Br. at 7).[10] The text message, without more, is insufficient to establish the existence of an implied contract. Plaintiff does not allege that he and his manager reached an agreement as to the permanency of his substitution for the driver in Mount Kisco. Plaintiff thus has not alleged the necessary mutual assent, which under New York law is required for an implied-in-fact contract. *Murray*, 444 F.3d at 178.

Accordingly, the motion is granted as to Plaintiff's breach of contract claim.

D.  Fourth Claim for Relief: Unpaid Commissions

Plaintiff alleges that Defendant owes him unpaid commissions that he earned in his last month of employment, November 2021. (Compl. ¶ 11). Defendant argues that the claim fails because Plaintiff does not explain the work he performed to earn the commission, nor what he is owed. (Def. Br. at 16). Plaintiff responds that during his employment he earned commission pay based on the specific amount of sales made to customers whose phones were repaired, and that Defendant improperly denied his commission pay for November 2021 on the basis that it was a bonus rather than commission. (Pl. Br. ¶ 4).

Plaintiff has plausibly alleged a claim for unpaid commissions. Plaintiff asserts that he was regularly paid commission on his sales, that he made sales in November 2021, and that Defendant

---

[10] *See Kyi v. 4C Food Corp.*, No. 22-CV-06301, 2024 WL 3028954, at *3 (E.D.N.Y. June 17, 2024) ("[A] court may 'consider materials outside of the [c]omplaint,' including 'materials that a *pro se* plaintiff attaches to [their] opposition papers' in deciding a motion to dismiss.") (quoting *Ceara v. Deacon*, 68 F. Supp. 3d 402, 410-11 (S.D.N.Y. 2014)).

withheld his commission on those sales. (*Id.*). Moreover, while Plaintiff does not state the exact dollar amount of commission pay he is owed, he claims that he does not have access to his paystubs. At this stage, Plaintiff's allegations are sufficient to sustain a claim for unpaid commissions under New York state law. *See Antonacci v. KJT Grp., Inc.*, No. 21-CV-06578, 2022 WL 1656787, at *4 (W.D.N.Y. May 25, 2022) (finding allegations sufficient to sustain a claim for unpaid commissions pursuant to New York Labor Law § 190(1) and noting that "[t]he amount of the commissions owed, if any, and whether the commissions were earned by plaintiff are matters better left for discovery and further proceedings in this case.").[11]

Accordingly, the motion is denied as Plaintiff's claim for unpaid commissions.

E. <u>Fifth Claim for Relief: Defamation</u>

Finally, Plaintiff alleges that Defendant defamed him in order to influence the investigator's decision during the EEOC investigation. (Compl. ¶ 13). "In New York, '[d]efamation is the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 41 (App. Div. 2014) (alteration in original)). Plaintiff, in order to state this claim, must allege: "(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused special damages." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp.

---

[11] *Cf. Cicero v. Intellor Grp., Inc.*, No. 18-CV-06934, 2021 WL 1720810, at *4 n. 7 (W.D.N.Y. Apr. 30, 2021) (dismissing claim for unpaid commissions where plaintiff did not allege having earned commissions on particular dates but rather asserted that "commissions were earned during the six-year period leading up to the filing of the action")

2d 323, 329 (S.D.N.Y. 2010) (alteration in original). "A defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." *Id.*. Under Federal Rule of Civil Procedure 8, Plaintiff must "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790 (S.D.N.Y. 2019) (citing *Neal v. Asta Funding, Inc.*, No. 13-CV-02176, 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014)).

Defendant moves to dismiss this claim on the basis that: (i) Plaintiff fails to allege a defamatory statement or when it was made or by whom; and (ii) Defendant's communications to the DHR investigator are privileged. (Def. Br. at 17-18). Here, Plaintiff asserts that Defendant made defamatory statements to the DHR investigators by claiming that Plaintiff promoted "socially and politically unacceptable views at the workplace"—namely, his statements about the "Kyle Rittenhouse court case" that "paint[ed] an image of [Plaintiff] as a White Supremacist." (Pl. Br. ¶ 5).

Even accepting that Plaintiff has sufficiently identified the alleged statements, the statements were allegedly made to the DHR investigator. The statements are, therefore, privileged. *See Prisco v. Air Indus. Grp.*, No. 15-CV-07340, 2017 WL 9485663, at *15 (E.D.N.Y. Sept. 1, 2017) ("The New York State Division of Human Rights, the Department of Labor, and the Workers' Compensation Board are all quasi-judicial in nature. As such, statements made to those tribunals throughout an investigation cannot form the basis of a defamation action."), *adopted by*, 2017 WL 4417665 (E.D.N.Y. Sept. 30, 2017); *Allen v. St. Cabrini Nursing Home*, No. 00-CV-08558, 2001 WL 286788, at *6 (S.D.N.Y. Mar. 9, 2001) ("Statements submitted to administrative

agencies are protected by absolute privilege."), *aff'd sub nom. Allen v. St. Cabrini Nursing Home Inc.*, 64 F. App'x 836 (2d Cir. 2003).

Accordingly, the motion is granted as to Plaintiff's claim for defamation.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint is GRANTED in part and DENIED in part. The motion is granted as to Plaintiff's claims for discrimination and retaliation in violation of NYSHRL, breach of contract, and defamation. The motion is denied as to Plaintiff's claims for discrimination and retaliation in violation of Title VII and for unpaid commissions.

Defendant is directed to file an answer to the complaint within 14 days of the date of this Order. The Court will thereafter docket a Notice of Initial Conference.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 14 and to mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED:

Dated: White Plains, New York
December 16, 2024

_____
Philip M. Halpern
United States District Judge